**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI (ST. LOUIS)**

| | | |
|---|---|---|
| RADHA GEISMANN, M.D., P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:14-cv-00472-CDP |
| | ) | |
| ZOCDOC, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM IN SUPPORT OF COMBINED MOTION TO TRANSFER, DISMISS, OR STAY</u>

# TABLE OF CONTENTS

**Page**

I.     Allegations ................................................................................ 2

II.    Legal Standard ......................................................................... 2

III.   Argument .................................................................................. 3

      A.     This case should be transferred to the Southern District of New York under 28 U.S.C. § 1404 ................................................. 3

      B.     Geismann's Complaint should be dismissed because its claims were mooted by ZocDoc's offer of judgment .......................... 7

      C.     To the extent it relies on ZocDoc's alleged failure to include an opt-out notice, Count I should be dismissed because ZocDoc has substantially complied with the TCPA .................................... 11

      D.     Count II should be dismissed because it fails to state a claim for conversion ............................................................................ 12

      E.     Count III should be dismissed because it fails to state a claim under the Missouri Consumer Fraud and Deceptive Business Practices Act ....................................................................................... 18

      F.     Even if it is not dismissed, this case should be stayed pending resolution of petitions before the FCC that would substantially impact the outcome of this case ............................................ 20

IV.   Conclusion ............................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Access Telecomms. v. Sw. Bell Tel. Co.*,
   137 F.3d 605 (8th Cir. 1998) .......................................................................................22

*Alpern v. UtiliCorp United*,
   84 F.3d 1525 (8th Cir. 1996) ......................................................................................... 8

*Alpharma, Inc. v. Pennfield Oil Co.*,
   411 F.3d 934 (8th Cir. 2005) .......................................................................................22

*Autobahn Specialists, Inc. v. Social UPS, LLC*,
   2012 WL 4215878 (W.D. Mo. Sept. 18, 2012) ...........................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 3

*Binkley v. American Equity Mortg., Inc.*,
   2014 WL 606389 (Feb. 18, 2014 Mo. App. E.D.) ........................................................ 7

*Bradley v. Transp. Sec. Admin.*,
   552 F. Supp. 2d 957 (E.D. Mo. 2008) .......................................................................12

*Breece v. Jett*,
   556 S.W.2d 696 (Mo. App. 1977) ..............................................................................13

*Burik v. Staples Contract & Commercial, Inc., et al.*,
   Case No. 12-cv-10806 (D. Mass.) ...............................................................................22

*Burkemper v. Dedert Corp.*,
   2011 WL 5330645 (E.D. Mo. Nov. 7, 2011) ............................................................... 5

*C.N. v. Willmar Public Schools*,
   591 F.3d 624 (8th Cir. 2010) ....................................................................................... 3

*C-Mart, Inc. v. Metro. Life Ins. Co.*,
   2013 WL 2403666 (E.D. Mo. May 31, 2013) .......................................................4, 5, 6

*Carter v. White*,
   241 S.W.3d 357 (Mo. App. 2007) ..............................................................................13

*Cole v. Homier Distributing Co., Inc.*,
   599 F.3d 856 (8th Cir. 2010) ....................................................................................... 3

*Damasco v. Clearwire Corp.*,
  662 F.3d 891 (7th Cir. 2012).............................................................................. 8

*Deposit Guaranty National Bank v. Roper*,
  445 U.S. 326 (1980) .......................................................................................10

*Dr. William M. Pollack v. Magna Chek, Inc.*,
  Case No. 14-cv-01024 (N.D. Ill.) ...................................................................22

*Dube v. Wyeth LLC*,
  943 F. Supp. 2d 1004 (E.D. Mo. 2013) ............................................................ 5

*G.M. Sign, Inc. v. Stergo*,
  2009 WL 5166219 (N.D. Ill. Dec. 23, 2009)...................................................13

*Geismann v. Allscripts Healthcare Solutions, Inc.*,
  Case No. 09-cv-05114 (N.D. Ill.) ..................................................................... 1

*Geismann v. Byram Healthcare Centers, Inc.*,
  Case No. 09-cv-01980 (E.D. Mo.) .................................................................... 1

*Geismann v. Contexo Media LLC*,
  Case No. 09SL-CC00237 (St. Louis County, Mo.)............................................ 1

*Genesis Healthcare v. Symczyk*,
  133 S.Ct. 1523 (2013)...............................................................................8, 9, 10

*Hess v. Chase Manhattan Bank*,
  220 S.W.3d 758 (Mo. 2007) ...........................................................................18

*Hogan Motor Leasing, Inc. v. Avis Rent-A-Car Systems, Inc.*,
  512 S.W.2d 427 (Mo. App. 1974)....................................................................16

*Holloway v. Lockhart*,
  813 F.3d 874 (8th Cir. 1987)...........................................................................15

*Ippert v. Schwan's Home Service, Inc.*,
  2011 WL 3444229 (E.D. Mo. Aug. 8, 2011)..................................................3, 4

*Jackson v. Charlie's Chevrolet, Inc.*,
  664 S.W.2d 675 (Mo. App. 1984)....................................................................18

*Landsman & Funk, P.C. v. Lorman Business Center, Inc.*,
  2009 WL 602019 (W.D. Wis. March 9, 2009) .................................................11

*Leaf Funding, Inc. v. Florissant MRG, Inc.*,
  2009 WL 322342 (E.D. Mo. Feb. 6, 2009).......................................................19

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ........................................................................ 8

*Magana Cathcart McCarthy v. CB Richard Ellis, Inc.,*
  174 Cal. App. 4th 106 (Cal. App. 2d Dist. 2009) ................................ 11

*Medical West Ballas Pharmacy, Ltd. v. Richie Enterprises, L.L.C.,*
  (St. Louis County Sept. 11, 2013) ...................................................... 22

*Nack v. Walburg,*
  715 F. 3d 680 (8th Cir. 2012) ............................................... 20, 21, 22

*Nack v. Walburg,*
  Case No. 4:10-cv-00478 (E.D. Mo.) .................................................. 21

*Missouri ex rel. Nixon v. Progressive Bus. Publ'ns, Inc.,*
  504 F. Supp. 2d 699 (W.D. Mo. 2007) .............................................. 19

*Reynolds County Memorial Hosp. v. Sun Bank of America,*
  974 S.W.2d 663 (Mo. App. S.D. 1998) ................................................ 7

*Rossario's Fine Jewelry, Inc. v. Paddock Publications, Inc.,*
  443 F. Supp. 2d 976 (N.D. Ill. 2006) ................................................. 15

*Silverberg v. H & R Block, Inc.,*
  2006 WL 1314005 (E.D. Mo. May 12, 2006) ...................................... 6

*Sosna v. Iowa,*
  419 U.S. 393 (1975) ....................................................................... 9, 10

*St. Louis Heart Center, Inc. v. The Forest Pharm., Inc.,*
  Case No. 4:12-cv-2224 (E.D. Mo.) .................................................... 21

*St. Louis Heart Center, Inc. v. Gilead Palo Alto, Inc., et al.,*
  Case No. 4:13-cv-00958 (E.D. Mo.) .................................................. 21

*Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.,*
  633 F. Supp. 2d 610 (N.D. Ill. 2009) ............................................ 16, 17

*U.S. Parole Commission v. Geraghty,*
  445 U.S. 388 (1980) ....................................................................... 9, 10

*Woods v. Wills,*
  400 F. Supp. 2d 1145 (E.D. Mo. 2005) .............................................. 16

**Statutes**

28 U.S.C. § 1391(b) ............................................................................... 3

iv

28 U.S.C. § 1404 ............................................................................................................2, 3

28 U.S.C. § 2342, *et seq.* ....................................................................................................20

Missouri Consumer Fraud and Deceptive Business Practices Act, Mo. Rev. Stat. §
    407.010, *et seq.* ..........................................................................................2, 18, 19

Telephone Consumer Protection Act, 47 U.S.C. § 227 ......................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................3, 16

Fed. R. Civ. P. 23 .............................................................................................................10

Fed. R. Civ. P. 68 .............................................................................................................. 7

**Other Authorities**

Rest. (2d) Torts § 222A ...............................................................................................13, 14

Defendant ZocDoc, Inc. ("ZocDoc"), is a free service operated out of New York City that allows patients to find a nearby doctor or dentist who accepts their insurance, see their real-time availability, and instantly book an appointment via ZocDoc.com or ZocDoc's free applications for iPhone or Android. Plaintiff Radha Geismann, M.D., P.C. ("Geismann") is a single-doctor medical practice in St. Louis, Missouri. Geismann apparently supplements the income of its medical practice by being a serial plaintiff in this District and across the country. A docket search reveals that Geismann has been a plaintiff in at least 30 lawsuits in multiple jurisdictions, most of them in Missouri state court, where this case was originally filed, and many of them are based on the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1]

In this case, Geismann's Class Action Petition (Docket Entry 1, Exh. A) ("Complaint" or "Compl.") alleges that it received two single-page faxes from ZocDoc in 2012 that were allegedly unsolicited and allegedly did not contain adequate opt-out notices. But Geismann does not allege that it ever attempted to opt out. In fact, it appears from the Complaint that Geismann never attempted to follow the clear opt-out instructions contained in the original fax on July 24, 2012 (*see* Compl., Exh. 1), and then, after receiving a second fax on October 2, 2012 (*see* Compl., Exh. 2), Geismann held onto the faxes for more than a year before filing this lawsuit.

The Complaint presents a number of issues that this Court should address at the pleadings stage. First, for convenience and in the interests of justice, this matter should be transferred to the United States District Court for the Southern District of New York

---

[1] *See, e.g., Geismann v. Byram Healthcare Centers, Inc.*, Case No. 09-cv-01980 (E.D. Mo.); *Geismann v. Allscripts Healthcare Solutions, Inc.*, Case No. 09-cv-05114 (N.D. Ill.); *Geismann v. Contexo Media LLC*, Case No. 09SL-CC00237 (St. Louis County, Mo.).

because that is where ZocDoc's operations, witnesses, and relevant documents and data are. If the Court transfers the case, it need not consider the remainder of the issues raised in this motion. But if the Court retains jurisdiction, the case should be dismissed because (1) Geismann's claims were mooted by ZocDoc's offer of judgment, (2) Geismann's TCPA count fails to state a claim to the extent it alleges an inadequate opt-out notice, (3) Geismann's conversion count fails to state a claim, and (4) Geismann's consumer fraud count fails to state a claim. For all of these reasons, the Complaint should be dismissed with prejudice, if it is not transferred. Finally, if the case is not transferred or dismissed, it should be stayed pending resolution of critical and relevant petitions before the Federal Communications Commission ("FCC").[2]

## I. Allegations

Geismann alleges that ZocDoc sent Geissman two single-page, unsolicited faxes in 2012 that did not contain proper opt-out notifications under the TCPA. (Compl. ¶¶ 9-10). Based on those two pieces of paper alone, Geismann filed a putative class action lawsuit more than a year later. Geismann's Complaint asserts claims for: (1) violation of the TCPA in Count I, (2) conversion in Count II, and (3) violation of the Missouri Consumer Fraud and Deceptive Business Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*, in Count III. (Compl. ¶¶ 29-69).

## II. Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or

---

[2] As set forth in ZocDoc's Motion to Strike Class Allegations filed contemporaneously with this Motion, the Complaint's class allegations also are fatally flawed and should be stricken even if this case is allowed to continue in this District.

division where it might have been brought." In determining whether to transfer a case to another proper venue, courts engage in a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors," including both "convenience" and "interest of justice" factors. *Ippert v. Schwan's Home Service, Inc*., 2011 WL 3444229, *2 (E.D. Mo. Aug. 8, 2011).

Under Rule 12(b)(6), a court must dismiss a complaint if it does not plead sufficient facts to state a claim upon which relief may be granted. The Eighth Circuit has held that "the complaint must set forth 'enough facts to state a claim to relief that is plausible on its face.'" *C.N. v. Willmar Public Schools*, 591 F.3d 624, 630 (8th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although it is true that the Court must accept the allegations in the Complaint as true and draw all reasonable inferences in favor of the nonmoving party, "[w]here [the Court] can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." *Cole v. Homier Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010).

## III.    Argument

### A.    This case should be transferred to the Southern District of New York under 28 U.S.C. § 1404.

Both convenience and the interests of justice show that this case should be transferred to the Southern District of New York. As an initial matter, the Southern District of New York is a proper venue because it encompasses New York City, where ZocDoc resides. *See* 28 U.S.C. § 1391(b); Declaration of Oliver Kharraz, MD ("Kharraz Decl."), attached as **Exhibit A**, ¶ 4.

In *C-Mart, Inc. v. Metro. Life Ins. Co.*, 2013 WL 2403666 (E.D. Mo. May 31, 2013), the court recently transferred a TCPA class action suit to the Southern District of Florida, the domicile of the TCPA defendants, because the lawsuit's only connection to Missouri was that the named plaintiff, a Missouri resident, allegedly received an unlawful fax in Missouri. In so ruling, the Court enumerated the "convenience factors" as: (1) the convenience of the parties, (2) the convenience of the witnesses — including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law. *Id.* at *3. Under similar circumstances as here, the court found these factors strongly favored transfer. *Id.* at *5.

First, the convenience of the parties and witnesses favors transfer. Other than the named plaintiff, there are no known witnesses in Missouri. ZocDoc has no office or employees in Missouri. Kharraz Decl. ¶ 7. Rather, all potential party witnesses are in New York, including ZocDoc's management and employees in ZocDoc's marketing and sales departments who have knowledge of ZocDoc's faxing operations. Kharraz Decl. ¶¶ 9-10. Ryan Lupo, whose name is listed at the bottom of one of the faxes allegedly sent to Geismann, is in New York. *See* Compl., Exh. 2; Kharraz Decl. ¶ 11. These facts alone warrant a transfer. *See C-Mart*, 2013 WL 2403666, at *3 ("The convenience of the witnesses is the primary, if not most important of the convenience factors.") (internal quotations omitted); *Ippert*, 2011 WL 3444229, at *2 (same).

Second, non-party witnesses, including former employees involved in ZocDoc's faxing operations, are more likely to be located in or around New York. On information

and belief, Spenser Feldstein, a former employee whose name also is listed at the bottom of one of the faxes allegedly sent to Geismann, lives in or around New York. *See* Compl., Exh. 1; Kharraz Decl. ¶ 12. These non-party witnesses are outside this Court's subpoena power, another factor weighing heavily in favor of transfer. *See Dube v. Wyeth LLC*, 943 F. Supp. 2d 1004, 1008-09 (E.D. Mo. 2013) (finding the convenience of non-party witnesses a strong factor favoring transfer where key fact witnesses resided outside the 100–mile subpoena range and thus could be unavailable for live testimony at trial); *C-Mart*, 2013 WL 2403666, at *4 (same).

Third, the "accessibility of records and documents" favors New York because that is where ZocDoc has access to its records and servers. *See C-Mart*, 2013 WL 2403666, at *5; Kharraz Decl., ¶ 13. In addition, ZocDoc's employees knowledgeable about the records and data kept by ZocDoc work at the New York office. Kharraz Decl., ¶ 14.

Fourth, the "location where the conduct complained of occurred" strongly favors transfer because the alleged faxes sent to Geismann came from New York. *See* Compl., Ex. 1 and 2; *C-Mart*, 2013 WL 2403666, at *4 (holding alleged TCPA violation occurred in Florida, where unlawful fax was sent, weighing in favor of transfer to Florida).

Finally, to the extent Missouri substantive law may apply to Geismann's state law claims, this should not be a concern for the Court because "federal courts routinely apply and interpret laws of other states." *Burkemper v. Dedert Corp.*, 2011 WL 5330645, *3 (E.D. Mo. Nov. 7, 2011). Moreover, Geismann does not limit the class definitions geographically to Missouri. (Compl. ¶¶ 30, 50, 62).

In addition to "convenience factors," interest of justice factors also weigh strongly in favor of transfer because the vast majority of witnesses have no connection to Missouri

and the alleged event giving rise to the litigation — namely, the alleged **sending** of the fax — did not occur in Missouri. *See C-Mart*, 2013 WL 2403666, at *5 (finding these factors supported transfer "in the interest of justice"). Moreover, the availability of compulsory process for attendance of potentially unwilling New York witnesses and the cost of obtaining attendance of willing witnesses both weigh in favor of transfer as well. *See id*. at *3 (factors include "obstacles to a fair trial" and "the comparative costs to the parties of litigating in each forum"). Further, Geismann could enforce any judgment in New York, there are no advantages of having this Court determine issues of federal TCPA law, and the Southern District of New York processes cases faster.[3] *See id*. at *3 (listing "interest of justice" factors). Finally, because there is no geographic limitation in Geismann's class definitions, Geismann is presumably attempting to assert nationwide classes. (Compl. ¶¶ 30, 50, 62). Accordingly, Geismann's choice of forum should be given no deference. *Id*. at *5; s*ee also Silverberg v. H & R Block, Inc*., 2006 WL 1314005, at *2 n. 6 (E.D. Mo. May 12, 2006) ("[W]here there are hundreds of potential plaintiffs, [the] claim of any one plaintiff that [the] home forum is appropriate is 'considerably weakened.'").[4]

For all of the foregoing reasons, this case should be transferred to the Southern District of New York.

---

[3] According to the "United States District Courts – National Judicial Caseload Profile" at www.uscourts.gov, in 2013 the median time from filing to disposition of a civil lawsuit was 8.4 months in this Court, compared to 8.2 months in the Southern District of New York.

[4] In fact, because ZocDoc originally serviced only New York when ZocDoc began operations in 2007, and only began expanding nationally in October 2009, there is a strong likelihood a large number of putative class members reside in New York. Kharraz Decl. ¶ 5.

**B.    Geismann's Complaint should be dismissed because its claims were mooted by ZocDoc's offer of judgment.**

If the Court transfers this case, it need not consider the remaining arguments in this Motion. But if the Court retains jurisdiction, the Complaint should be dismissed. First, Geismann lacks standing because ZocDoc's offer of judgment mooted its claim. On March 27, 2014, counsel for ZocDoc served Geismann's counsel with an offer of judgment pursuant to Fed. R. Civ. P. 68. (Declaration of Matthew Jacober attached as **Exhibit B**). This offer was for a total dollar amount of $6,000.00 in addition to reasonable attorneys' fees as determined by the Court related solely to Geismann's individual claim and an injunction barring ZocDoc from engaging in the statutory violations alleged in this action. *Id.* Geismann rejected this offer. *Id.*

Although the Complaint does not seek a sum certain in damages, there can be no doubt that ZocDoc's offer of judgment provides more relief than Geismann could reasonably expect to receive individually even if it pursued the case to judgment. Geismann has alleged that it received two faxes that allegedly violated the TCPA. (Compl. ¶¶ 9-10). The maximum possible damages under the TCPA for these faxes would be $3,000 ($1,500 per fax). *See* 47 U.S.C. § 227(b)(3). And Geismann's claims for conversion and under the Missouri consumer protection statute likely would result in nominal (if any) damages, even if those claims were successful. *See Reynolds County Memorial Hosp. v. Sun Bank of America*, 974 S.W.2d 663, 666 (Mo. App. S.D. 1998) (holding that nominal damages may be awarded for a technical conversion when no actual damages are shown); *Binkley v. American Equity Mortg., Inc.*, 2014 WL 606389, *6 (Feb. 18, 2014 Mo. App. E.D.) (noting that an "ascertainable loss" is required for damages under the Missouri consumer fraud statute). Thus, ZocDoc has offered

Geismann **double** what it could reasonably hope to recover in litigation, plus fees and injunctive relief.

Article III of the Constitution limits the federal courts to deciding "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' **at any point during litigation**, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare v. Symczyk*, 133 S.Ct. 1523, 1528 (2013) (emphasis added); *see also Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir. 2012) ("[O]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright . . . because [he] has no remaining stake.").

Geismann filed a motion for class certification when it filed its Complaint, arguing that "[m]ost courts . . . have held that filing a motion for class certification with the initial petition or within a number of days after service of any settlement offer to a named plaintiff staves off offers of judgment to the named plaintiff." (Docket Entry 1, Exh A, p. 21).[5] Geismann presumably will make that same argument in response to this Motion. But that argument is inconsistent with the long-established Supreme Court precedent that was reaffirmed last year in *Genesis Healthcare*.

For nearly 40 years, the Supreme Court has emphasized the actual certification

---

[5] In its cursory motion for class certification, Geismann argues that a number of decisions support the proposition that "[a]ny settlement offer made after the filing of the motion for class certification must be made on a class-wide basis." (Docket Entry 1, Exh A, p. 21). But only one of the cases cited by Geismann would be binding on this Court, and it is distinguishable. In *Alpern v. UtiliCorp United*, the tender and rejection of the offer of judgment came **after** the district court ruled on the request for class certification. 84 F.3d 1525, 1538 (8th Cir. 1996).

decision (rather than a plaintiff's motion for class certification) as the threshold for a class to acquire independent legal standing. In *Sosna v. Iowa*, the Supreme Court evaluated the constitutionality of a residency requirement under Iowa divorce law. 419 U.S. 393, 394 (1975). Among the issues presented to the Court was whether the named plaintiff's claim was moot because she had satisfied the residency requirement during the pendency of the case. *Id.* The Court held that litigation was "saved from mootness only by the fact that ***class certification occurred prior to*** appellant's change in circumstance." *Id.* at 415 (emphasis added). The focus was not on when the plaintiff moved for class certification but on when actual certification occurred.

The Supreme Court had the same focus five years later in *U.S. Parole Commission v. Geraghty*, 445 U.S. 388 (1980). The Court held that a plaintiff may only litigate the class certification issue despite loss of his personal stake in the outcome of the litigation "[w]hen the claim on the merits is 'capable of repetition, yet evading review,'"[6] or when "certification of a class [occurred] prior to expiration of the named plaintiff's personal claim." *Id.* at 389. Again, the Supreme Court established that the key issue was whether the class certification decision had been made — not whether a motion had been filed.

Last year, the Supreme Court reaffirmed that despite how some federal courts have treated the mootness doctrine, the standards set forth in *Sosna* and *Geraghty* should still govern. In *Genesis*, the Supreme Court upheld dismissal based on mooting in a collective action under the Fair Labor Standards Act. *Id.* The Supreme Court held that

---

[6] In this case, Geismann cannot reasonably argue that its claim is "capable of repetition, yet evading review." Geismann's claim is unlikely to arise again (unless it requests a fax from ZocDoc) and even if it did, Geismann could once again be made "whole" through the payment of alleged damages.

"the mere presence of collective-action allegations in the complaint cannot save the suit from mootness once the individual claim is satisfied." *Id.* at 1529. As the Court observed, "essential to our decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status **once it is certified under Rule 23**." *Id.* at 1530 (emphasis added). Hence, while the Supreme Court recognized a narrow "relation back" rule where a representative's claim was mooted after **certification** (as was the case in *Sosna*), Article III standing limitations require dismissal where "[t]here is simply no certification decision to which respondent's claim could have related back." *Id.*[7]

The attempts by some federal courts to expand this analysis to allow a plaintiff to avoid mooting simply by **moving** for class certification is not supported by the relevant Supreme Court case law or common sense. It is entirely reasonable that a class certified by the court after a rigorous analysis should have independent legal standing. But a plaintiff should not be able to artificially create legal standing for a class of individuals that may never be certified simply by filing a cursory motion for class certification that may be entirely without merit. The rulings in *Sosna*, *Geraghty*, and *Genesis* indicate that the Supreme Court recognized this important distinction, and this Court should follow suit.

---

[7] The Court in *Genesis* also clarified its earlier opinions that had cast doubt on the propriety of "picking off" Rule 23 class representatives. The Court clarified that language in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 339 (1980), to the effect that such maneuvers "frustrate the objectives of class actions" was merely *dicta*. *See Genesis*, 133 S. Ct. at 1531-32. Rather, the crucial inquiry of *Roper* was whether the plaintiff possessed "a continuing personal economic stake in the litigation, even after the defendant's offer of judgment." *Id.* at 1532 (*citing Roper*, 445 U.S. at 336).

In this case, Geismann's claim was mooted by ZocDoc's offer of judgment before a decision on class certification. Because the class did not have "independent legal status" before the offer of judgment was made, Geismann's case must now be dismissed.

**C.** **To the extent it relies on ZocDoc's alleged failure to include an opt-out notice, Count I should be dismissed because ZocDoc has substantially complied with the TCPA.**

Even if Geismann's claims were not moot, the Court should dismiss each of the three counts because they are inadequately pled. The Court should dismiss Count I to the extent it seeks relief based on ZocDoc's alleged failure to include an opt-out notice. To meet the requirements of the TCPA, an opt-out notice must: (1) be clear and conspicuous and on the first page of the fax, (2) state that the recipient may make an opt-out request, (3) explain that the sender must comply with the opt-out in the shortest reasonable time, (4) explain what must be included in a valid opt-out, (5) include a domestic contact telephone and fax machine number, as well as a cost-free opt-out mechanism, and (6) comply with the technical requirements of the TCPA. 47 U.S.C. § 227(b)(2)(D). But substantial compliance with the TCPA's opt-out requirements is a valid defense. *See Landsman & Funk, P.C. v. Lorman Business Center, Inc.*, 2009 WL 602019, *7 (W.D. Wis. March 9, 2009) (holding that a defendant's opt-out notice was sufficient even though it did not strictly comply with the statutory requirements); *Magana Cathcart McCarthy v. CB Richard Ellis, Inc.*, 174 Cal. App. 4th 106, 112 (Cal. App. 2d Dist. 2009) (reversing the trial court's summary judgment ruling on procedural grounds but noting the trial court's holding that "substantial compliance is a defense to a claim for failure to comply with the opt-out mechanisms of the statute").[8]

---

[8] Notably, a petition was filed with the FCC on March 28, 2014, seeking a declaratory ruling that "faxes sent pursuant to the recipient's prior express invitation or

The two faxes at issue in this case contain opt-out notices. (Compl., Exh. 1 and 2). The faxes state: "To stop receiving faxes, please call (866) 975-3308." *Id.* Any reasonable person would know how to avoid future faxes. (Geismann never opted out — rather, it collected the faxes to file this lawsuit.) The notice is clear and conspicuous, it is on the first page of the fax, it tells the recipient how to opt out, and it provides a domestic, cost-free option for opting out. To award damages because the faxes do not contain more detailed information about the opt-out process would elevate form over substance. The Court should find that the faxes substantially complied with the opt-out requirements and that Count I (to the extent it contains opt-out notice allegations) should be dismissed, with prejudice.

### D. Count II should be dismissed because it fails to state a claim for conversion.

The Court also should dismiss Count II because it fails to state a claim for conversion. "Conversion is the unauthorized assumption and exercise of the right of ownership over the personal property of another to the exclusion of the owner's rights." *Bradley v. Transp. Sec. Admin.*, 552 F. Supp. 2d 957, 961 (E.D. Mo. 2008). To state a claim for conversion, a plaintiff must plead: (1) that plaintiff was the owner of the property or entitled to its possession; (2) that defendant took possession of the property with the intent to exercise some control over it; and (3) that defendant thereby deprived plaintiff of the right to possession. *Id.* Missouri courts have held that "[c]onversion may be proven in one of three ways: '(1) by tortious taking; (2) by any use or appropriation to

---

permission that includes [sic] an effective opt-out on the first page of the fax comply substantially with" the relevant regulations. *See Petition of Magna Chek, Inc. for Declaratory Ruling and/or Waiver*, CG Docket Nos. 02-278, 05-338, at p. 9. This is one of several petitions currently pending with the FCC seeking this same relief. *See* ZocDoc's argument to stay proceedings, Section III.F, *infra*.

the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; or (3) by a refusal to give up possession to the owner on demand.'" *Carter v. White*, 241 S.W.3d 357, 362 (Mo. App. 2007) (internal citation omitted).

As an initial matter, Geismann's allegation that the faxes "effectively stole Plaintiff's employee's time" (Compl. ¶ 59) is not actionable. Employee time is not "property" owned by Geismann. *See G.M. Sign, Inc. v. Stergo*, 2009 WL 5166219, *2 (N.D. Ill. Dec. 23, 2009) ("Plaintiff's assertion that Defendant converted Plaintiff's employees' time fails under a conversion theory as a person's time is not a chattel over which plaintiff had the immediate and unconditional right to possess.") (internal quotation omitted).

In analyzing the remaining alleged damages, the Court should assess each type separately: (1) a tiny percentage of toner from a toner cartridge; and (2) a piece of paper with print on the front.[9] As an overarching matter, the following portion of the Restatement (Second) of Torts should be kept in mind: "Conversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value." Rest. (2d) Torts § 222A, cmt. C; *see Breece v. Jett*, 556 S.W.2d 696, 709 (Mo. App. 1977) (quoting and adopting Section 222A of the Restatement (Second) of Torts).

According to Section 222A of the Restatement (Second) of Torts: "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes

---

[9] For the purposes of this argument, ZocDoc assumes the fax machine at issue was a traditional paper-and-toner fax machine. ZocDoc reserves the right to raise additional arguments if it subsequently learns that the faxes were received digitally.

with the right of another to control it that the actor may justly be required to pay the other for the full value of the chattel." Rest. (2d) Torts § 222A. The following six factors are to be considered in determining whether the seriousness of the interference justifies requiring ZocDoc to pay full value for the chattel: (1) extent and duration of the exercise of dominion or control; (2) ZocDoc's intent to assert a right inconsistent with Geismann's right of control; (3) ZocDoc's good faith; (4) the extent and duration of the resulting interference with ZocDoc's right of control; (5) the harm done to the chattel; and (6) the inconvenience and expense caused to Geismann. *Id.*

The first issue is whether a tiny percentage of toner used from a toner cartridge to print on the front of two single-page faxes is a chattel, or whether the toner cartridge itself is the chattel (or, perhaps even more appropriate, whether the fax machine as a whole is the chattel). The tiny percentage of toner is akin to using the radio while allegedly engaging in conversion of an automobile. The claim there would not be for conversion of electricity from the car battery; the claim would be for conversion of the automobile itself. Because the conversion of the electricity does nothing to diminish the value of the car, the damages for the alleged conversion would be *de minimis* (if not nonexistent).

The fax machine cartridge or the printer is the chattel, and use of a tiny percentage of the toner in that chattel is a minor interference with the overall chattel. The use does not reduce the value of the cartridge or fax machine as a whole in any meaningful way. The extent and duration of the resulting alleged interference with Geismann's right to control the cartridge or fax machine was brief. The alleged harm done to the cartridge or facsimile machine was minimal to nonexistent. The alleged inconvenience and expense

caused to Geismann, if any, was *de minimis*. And Geismann's own allegations even suggest that ZocDoc acted in good faith. (*See* Compl. ¶ 46) ("Defendant did not intend to send the transmission of the documents Exhibits 1-2 to any person where such transmission was not authorized by law or by the recipient.").

As with the toner, there is a significant question about whether the paper in the printer is a separate chattel or whether the paper is merely a component of the printer, which is the chattel. Regardless, Geismann alleges it received only two one-sided, single-page letters. (Compl., Exh. 1 and 2). Although Geismann alleges the paper was rendered unusable, the Court can take judicial notice of the fact that the paper can be re-used for a future facsimile by simply flipping the piece of paper over and printing on the other side. *See Holloway v. Lockhart*, 813 F.3d 874, 878-79 (8th Cir. 1987) ("Judicial notice is permitted of facts that are generally known within the territory of the court's jurisdiction or are capable of accurate and ready determination from a source whose accuracy is beyond reasonable doubt."). The extent and duration of the alleged interference with the piece of paper was minimal. The paper was not rendered unusable. And the inconvenience to Geismann (e.g. flipping the paper over and feeding it back through the fax machine) was minimal and free (the paper could be reused at no expense). As with the toner, the Restatement factors as applied to the paper point toward dismissal with prejudice of the conversion count.

Geismann's claim also fails because ZocDoc never took possession of this property. In similar cases, courts have recognized that the sender of a fax is not liable for conversion of the recipient's fax machines, paper, and toner because the sender never "possesses" this property. *See, e.g., Rossario's Fine Jewelry, Inc. v. Paddock*

*Publications, Inc.*, 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (dismissing conversion claim where plaintiff's "property (ink, toner and paper) . . . never came into [defendant's] possession at all . . . [and] was never 'unlawfully held'" by the defendant such that defendant "could be said to have 'assumed control, dominion or ownership over the property'"). This same reasoning applies under Missouri law, where courts have held that "[t]o make out conversion there must be proof of a wrongful possession, or the exercise of dominion over it, in exclusion of owner's rights." *Woods v. Wills*, 400 F. Supp. 2d 1145, 1181 (E.D. Mo. 2005). Geismann has not alleged (and cannot allege) that ZocDoc took actual possession of Geismann's fax machine. The fax machine, paper, and toner remained at all times in Geismann's possession. Moreover, the sender of a fax loses control over the communication once it is sent. The transmission may fail to be completed for a variety of reasons. Thus, because ZocDoc never possessed or controlled Geismann's fax machine, the conversion claim fails.

Finally, even if Geismann's allegations were sufficient to state a claim for conversion, Count II should be dismissed because the alleged damages are *de minimis* and "[t]he law does not concern itself with trifles." *Hogan Motor Leasing, Inc. v. Avis Rent-A-Car Systems, Inc.*, 512 S.W.2d 427, 428 (Mo. App. 1974). The court's decision in *Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc.*, 633 F. Supp. 2d 610, 615 (N.D. Ill. 2009) aptly illustrates why the *de minimis* doctrine mandates Rule 12(b)(6) dismissal of a conversion claim based on an unwanted fax:

> For example, if the defendant takes the plaintiff's inexpensive ballpoint pen and a notebook without his permission, uses the pen and one sheet of paper from the notebook to write a short letter, and then immediately returns the remainder of the plaintiff's supplies to him, the *de minimis* doctrine would be implicated. Technically, plaintiff still would have a claim for conversion based on the loss of the ink from the pen and the

16

> missing sheet of paper that was used to write the letter. However, this claim would be so insignificant or trifling that the *de minimis* doctrine would bar the plaintiff from proceeding on such claim.

633 F. Supp. 2d at 615.

Although not all federal courts agree that conversion claims based on unwanted faxes are barred by the *de minimis* doctrine, many of those decisions erroneously consider the potential aggregate harm to plaintiffs' putative classes. As *Stonecrafters* correctly noted, the aggregate harm to the putative class cannot be considered if the plaintiff's claim is *de minimis* because a plaintiff must have a valid claim himself before he can represent a class. 633 F. Supp. 2d at 614. Even if the potential damages of a class are considered, the "damages" are still a pittance. The aggregate harm to a class of 1,000 fax recipients would be about $20, and potentially even less. *Stonecrafters*, 633 F. Supp. 2d at 617 n. 7 ("This calculation assumes a loss of $0.02 per page for each unauthorized fax advertisement. In the Court's view, the estimate of $0.02 per page may be too generous, given the ordinary cost of paper and toner, especially if the paper is purchased in bulk.").

Some courts also mistake the critical distinction between nominal damages and the *de minimis* doctrine. An award of nominal damages "presupposes a violation of sufficient gravity to merit a judgment, even if significant damages cannot be proved." *Autobahn Specialists, Inc. v. Social UPS, LLC*, 2012 WL 4215878, *3 (W.D. Mo. Sept. 18, 2012). The *de minimis* doctrine bars claims where, as here, "the plaintiff has suffered no more than negligible damages from the beginning." *Stonecrafters*, 633 F. Supp. 2d at 614.

Thus, even if the Court finds that Geismann has pled the elements of conversion, it should follow *Stonecrafters* and other well-reasoned decisions and dismiss the conversion claim as *de minimis*.

**E.** **Count III should be dismissed because it fails to state a claim under the Missouri Consumer Fraud and Deceptive Business Practices Act.**

Finally, the Court should dismiss Count III because it fails to state a claim for violation of what Geismann calls the Missouri Consumer Fraud and Deceptive Business Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*, which is more commonly known as the Missouri Merchandising Practices Act ("MMPA"). The MMPA establishes that to bring a civil action to recover damages under the MMPA, a plaintiff must allege that (1) he or she purchased merchandise (2) for personal, family, or household purposes and (3) suffered an ascertainable loss of money or property (4) as a result of an act declared unlawful by Mo. Rev. St. § 407.020. *See Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 773 (Mo. 2007). Count III fails to plead these elements and should be dismissed.

First, Geismann did not purchase anything from ZocDoc. Missouri courts have made clear that private litigants must purchase merchandise before they may bring a cause of action under the MMPA. "The principal thrust of [the MMPA] is directed toward authorizing the Attorney General to enjoin those who sell or attempt to sell merchandise from using unlawful practices. A private cause of action is given only to one who purchases and suffers damage." *Jackson v. Charlie's Chevrolet, Inc.*, 664 S.W.2d 675, 677 (Mo. App. 1984). Here, the conduct complained of — the receipt of an allegedly unauthorized facsimile communication — was unconnected to any purchase by Geismann.

Second, even if Geismann "purchased" merchandise under the terms of the MMPA, it certainly did not do so for "personal, family or household purposes." It is well-established that a business, purchasing services or merchandise for business use, may not state a claim under the MMPA. *See, e.g., Leaf Funding, Inc. v. Florissant MRG, Inc.*, 2009 WL 322342, *1 (E.D. Mo. Feb. 6, 2009) (noting that "the MMPA does not apply to the purchase or lease of commercial merchandise"). As the Complaint alleges, "Radha Geismann, M.D., P.C.," is not an individual but is a professional corporation suing in its business capacity. (Compl. ¶ 7). As a result, it could not have purchased merchandise for "personal, family or household purposes," and therefore lacks standing under the MMPA.

Finally, the act complained of here — the sending of a two allegedly unsolicited fax communications — is not unlawful under the MMPA. The MMPA prohibits "unlawful practices," defined as "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020. Geismann contends that ZocDoc's "unsolicited fax practice is an unfair practice, because it violates public policy, and because it forced Plaintiff and the other class members to incur expense without any consideration in return." (Compl. ¶ 66). But the practice of sending fax communications is not the type of "deception" or "unfair practice" contemplated by the MMPA. *See Missouri ex rel. Nixon v. Progressive Bus. Publ'ns, Inc.*, 504 F. Supp. 2d 699, 707 (W.D. Mo. 2007). That court held that "plaintiff's attempt to couch its TCPA claims within the [M]MPA is improper, as the activities targeted by plaintiff are not the sort of actions that are tainted

by conventional unfair practices or consumer fraud.  Thus, these actions are not covered by the [M]MPA."  *Id.*  The same result should be reached here and the MMPA claim should be dismissed, with prejudice.

> **F.   Even if it is not dismissed, this case should be stayed pending resolution of petitions before the FCC that would substantially impact the outcome of this case.**

Even if the Court retains jurisdiction and does not dismiss the Complaint for any of the reasons set forth above, this matter should be stayed.  The Eighth Circuit has held that there is a private right of action under the TCPA for failure to include an opt-out notice.  *See Nack v. Walburg*, 715 F. 3d 680, 687 (8th Cir. 2012).  Because *Nack* is binding on this Court, ZocDoc does not argue at this time that failure to include an opt-out notice is not the basis of an independent cause of action.  But the Eighth Circuit reached this conclusion begrudgingly, noting that "it is questionable whether the regulation at issue (thus interpreted) properly could have been promulgated under the statutory section that authorizes a private cause of action," while still ruling in favor of the plaintiff because "[t]he Administrative Orders Review Act ('Hobbs Act'), 28 U.S.C. § 2342, *et seq.*, precludes us from entertaining challenges to the regulation other than on appeals arising from agency proceedings."  *Id.* at 582.

The Eighth Circuit held that the Hobbs Act requires district courts to defer to the FCC's interpretation of the TCPA regulations.  But the opt-out regulations that form the basis for at least a portion of Geismann's TCPA claim have been called into question by a series of petitions to the FCC arguing that the FCC should change its interpretation.[10]

---

[10] *See, e.g., Petition of Magna Chek, Inc. for Declaratory Ruling and/or Waiver,* CG Docket Nos. 02-278, 05-338 (FCC March 28, 2014); *Petition of Crown Mortgage Company for Declaratory Rulings and/or Waiver of the "Opt Out Requirement,* CG Docket 05-338 (FCC March 4, 2014); *Petition for Declaratory Ruling Regarding the*

These petitions ask the FCC to modify its regulations to reflect that the opt-out regulation does not provide an independent cause of action and/or that the opt-out regulation is limited to unsolicited faxes. The petitions also seek a waiver for past unintended violations of this regulation. An FCC grant of some or all of the relief sought in these petitions would modify the FCC's regulations on this portion of the TCPA, and under the *Nack* decision, this Court would be required to defer to the FCC on its interpretation of those rules. Accordingly, the Court should stay this proceeding until the FCC has ruled on these pending petitions.

Such a stay is expressly contemplated by the Eighth Circuit's decision in *Nack*. In remanding the case, the court noted that "the district court may entertain any requests to stay proceedings for pursuit of administrative determination of the issues raised herein," 715 F.3d at 687, and the district court stayed the *Nack* case on September 12, 2013, so that the defendant could seek relief from the FCC. *See Nack v. Walburg*, Case No. 4:10-cv-00478 (E.D. Mo.) (Docket Entry 61). Other courts also have stayed TCPA cases pending a resolution of the FCC's decision on these petitions. *See, e.g., St. Louis Heart Center, Inc. v. The Forest Pharm., Inc.*, Case No. 4:12-cv-2224 (E.D. Mo.) (Docket Entry 72); *St. Louis Heart Center, Inc. v. Gilead Palo Alto, Inc. et al*, Case No.

*Statutory Basis for the Commission's Opt-Out Notice Rule with Respect to Solicited Faxes, and/or Regarding Substantial Compliance with Section 64.1200(a)(4)(iii) and (iv) of the Commission's Rules*, CG Docket No. 05-338 (FCC Dec. 12, 2013); *Petition of Futuredontics, Inc. for Declaratory Ruling and/or Waiver*, CG Docket No. 05-338 (FCC Oct. 18, 2013); *In re Petition of Douglas Walburg and Richie Enterprises, LLC for Declaratory Ruling to Clarify Scope and/or Statutory Basis for Rule 64.1200(a)(3)(iv) and/or for Waiver*, CG Docket No. 05-338 (FCC Aug. 19, 2013); *Petition for Declaratory Ruling and/or Waiver by Forest Pharmaceuticals, Inc.*, CG Docket No. 05-338 (FCC July 24, 2013); *Petition of Staples, Inc. and Quill Corporation for a Rulemaking to Repeal Rule 64.1200(a)(3)(iv) and for a Declaratory Ruling to Interpret Rule 64.1200(a)(3)(iv)*, CG Docket No. 02-278, 05-338 (FCC July 19, 2013).

4:13-cv-00958 (E.D. Mo.) (Docket Entry 42); *Burik v. Staples Contract & Commercial, Inc., et al.*, Case No. 12-cv-10806 (D. Mass.) (Docket Entry 90); *Medical West Ballas Pharmacy, Ltd. v. Richie Enterprises, L.L.C.*, Case No. 09SL-CC05410 (St. Louis County Sept. 11, 2013).[11] Courts have stayed proceedings of this nature even when the defendant has not filed a petition with the FCC because the pending administrative proceedings will have a "substantial effect" on the disposition of such cases. *See Raitport v. Harbour Capital Corp.*, 2013 WL 4883765, *1 (D.N.H. Sept. 12, 2013).

In staying these proceedings, courts have invoked the "primary jurisdiction doctrine," which is a common-law doctrine utilized to coordinate judicial and administrative decision making." *Access Telecomms. v. Sw. Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (internal quotation marks and citation omitted). "Deferral to an agency determination is appropriate for (1) the promotion of consistency and uniformity within the areas of regulation, and (2) the use of agency expertise in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion." *Alpharma*, 411 F.3d at 938 (internal citation omitted). Here, the volume of cases that already have been stayed on this same issue demonstrates that a stay would promote consistency and uniformity, and the *Nack* decision strongly suggests that cases of this nature require the exercise of administrative discretion. Thus, if the

---

[11] A motion to stay is also pending in *Dr. William M. Pollack v. Magna Chek, Inc.*, Case No. 14-cv-01024 (N.D. Ill.) (Docket Entry 23).

Court does not transfer this case to the Southern District of New York or dismiss this case outright, it should exercise its power to stay this case pending a resolution of the relevant petitions before the FCC.

## IV.  Conclusion

For the foregoing reasons, this case should be transferred to the Southern District of New York or, alternatively, all three counts of the Complaint should be dismissed, with prejudice.  If the case is not dismissed or transferred, it should be stayed.

Dated: April 18, 2014

Respectfully submitted,

LATHROP & GAGE LLP

*/s/ Blaine C. Kimrey*

Blaine C. Kimrey (#50074)
bkimrey@lathropgage.com
155 N. Wacker Drive, Suite 3050
Chicago, IL 60606
Telephone: (312) 920-3300
Facsimile:  (312) 920-3301

Matthew Jacober (#51585)
mjacober@lathropgage.com
Pierre Laclede Center
7701 Forsyth Blvd., Suite 500
Clayton, MO 63105
Telephone: (314) 613-2800
Facsimile: (314) 613-2801

**Attorneys for defendant ZocDoc, Inc.**

## CERTIFICATE OF SERVICE

I, Blaine C. Kimrey, hereby certify that on this 18th day of April, 2014, a true and correct copy of the foregoing was served by CM/ECF to the parties registered with the Court's CM/ECF system.

*/s/ Blaine C. Kimrey*

# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI (ST. LOUIS)

RADHA GEISMANN, M.D., P.C.,     )
                                       )
         Plaintiff,          )
                                       )
     vs.                   )   Case No. 4:14-cv-00472-CDP
                                       )
ZOCDOC, INC.,                )
                                     )
         Defendant.     )
                                     )

## DECLARATION OF OLIVER KHARRAZ, MD

I, Oliver Kharraz, MD, declare under penalty of perjury as follows:

1.    I am Chief Operating Officer ("COO") of ZocDoc, Inc. ("ZocDoc"). I am submitting this declaration on ZocDoc's behalf in support of its Combined Motion to Transfer, Dismiss, or Stay.

2.    I am one of ZocDoc's founders and have been with ZocDoc since its inception in 2007.

3.    As COO, I have personal knowledge of ZocDoc's business operations, including its practices and procedures, and am familiar with the allegations made in the Complaint.

4.    ZocDoc is a corporation incorporated under the laws of Delaware. ZocDoc's headquarters and principal place of business is in New York at 568 Broadway #901, New York, NY 10012 (the "New York office").

5.    ZocDoc was incorporated in 2007. ZocDoc services were originally only available in New York. ZocDoc's services began expanding nationally in October 2009.

6.    In October 2012, ZocDoc opened a satellite office in Scottsdale, Arizona (the "Arizona office"), which hosts approximately 73 employees. None of these employees is likely to have information relevant to this litigation. ZocDoc has no other offices outside of New York.

7.    ZocDoc has no office in Missouri. ZocDoc does not employ anyone who works in Missouri.

8.      ZocDoc has approximately 498 employees.  All ZocDoc employees work at the New York office except for those who work at the Arizona office and 32 employees who work throughout the United States doing outside sales or managing outside sales executives.

9.      All members of ZocDoc's management (including myself) work at the New York office.

10.     ZocDoc's marketing and sales departments, which have knowledge of ZocDoc's faxing operations, are headquartered in the New York office.

11.     Ryan Lupo is an employee of ZocDoc who works at the New York office and resides in New York.

12.     Spenser Feldstein is a former ZocDoc employee who worked at the New York office.  Upon information and belief, Spenser Feldstein still lives in New York.

13.     All of ZocDoc's records — including its electronic records — are accessible in New York.  ZocDoc's records and data are hosted by servers on-site at the New York office and at PEER 1 Datacenter, located at 75 Broad Street, New York, NY, 10004.  ZocDoc also has records stored in data centers in New Jersey and Texas, but the data is accessed from terminals in the New York office.

14.     ZocDoc's administrative and information technology staff knowledgeable about the records and data kept by ZocDoc work at the New York office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed by me on April 17, 2014 in New York, NY.

_____
Oliver Kharraz, MD

# Exhibit B

RADHA GEISMANN, M.D., P.C., )
)
   Plaintiff, )
)
vs. )  Case No. 4:14-cv-00472-CDP
)
ZOCDOC, INC., )
)
   Defendant. )

## DECLARATION OF MATTHEW JACOBER

I, Matthew Jacober, declare under penalty of perjury as follows:

1.  I am a Partner with the law firm of Lathrop & Gage LLP, and I represent defendant ZocDoc, Inc. ("ZocDoc"), in this action. I am over the age of 21, I am competent to make this Declaration, and the facts set forth in this Declaration are based on my personal knowledge unless the context reveals otherwise.

2.  On March 27, 2014, I sent an email to plaintiff Radha Geismann, M.D., P.C.'s attorneys, Max Margulis and Brian Wanca, with an offer of judgment attached. A true and correct copy of that email, with the offer of judgment, is attached as **Exhibit 1.**

3.  Additionally, on March 27, 2014, I arranged for the offer of judgment to be delivered by hand to the office of Geismann's counsel in St. Louis and Bryan Clark of our Chicago office arranged for the offer of judgment to be delivered by hand to Geismann's counsel in Rolling Meadows, Ill.

4.  Pursuant to Fed. R. Civ. P. 68, Geismann had fourteen (14) days to accept the offer made by ZocDoc. Fed. R. Civ. P. 68(a).

5.  On April 8, 2014, Geismann's counsel Max Margulis sent an email to me rejecting the offer of judgment. A true and correct copy of that e-mail, with the offer of judgment, is attached as **Exhibit 2.**

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed this 18th day of April 2014 at St. Louis, Mo.

Matthew Jacober

# Exhibit 1

| | |
|---|---|
| **From:** | Jacober, Matthew A. |
| **Sent:** | Thursday, March 27, 2014 10:48 AM |
| **To:** | MaxMargulis@MargulisLaw.com; bwanca@andersonwanca.com |
| **Cc:** | Kimrey, Blaine C.; Clark, Bryan K. |
| **Subject:** | Geisman v. ZocDoc - Offer of Judgment |
| **Attachments:** | 2144_001.pdf |

Gentlemen –

Please see the attached, which has been or will be hand-delivered to each of your offices today. As indicated in the cover letter, Blaine Kimrey will address your questions.

Thanks Matt

LATHROP
& GAGE LLP

**Matthew Jacober**
**Partner**
Pierre Laclede Center, 7701 Forsyth Boulevard, Suite 500 | Clayton, MO 63105
P: 314.613.2845 | F: 314.613.2801 | M: 314.707.3962
MJacober@LATHROPGAGE.COM | www.lathropgage.com
*Please consider the environment before printing this email.*

# LATHROP & GAGE LLP

MATTHEW A. JACOBER
DIRECT LINE: 314.613.2845
EMAIL: MJACOBER@LATHROPGAGE.COM
WWW.LATHROPGAGE.COM

PIERRE LACLEDE CENTER
7701 FORSYTH BOULEVARD, SUITE 500
CLAYTON, MISSOURI 63105
PHONE: 314.613.2800
FAX: 314.613.2801

March 27, 2014

**VIA E-MAIL AND BY HAND DELIVERY**

Max G. Margulis, Esq.
Margulis Law Group
28 Old Belle Monte Road
Chesterfield, MO 63017

   Re: Geismann v. ZocDoc

Dear Mr. Margulis:

  We are sending an Offer of Judgment in the above-referenced matter. You may direct your response to my partner, Blaine Kimrey.

      Very truly yours,

      LATHROP & GAGE LLP

      By: _____
        Matthew A. Jacober

MAJ/rrb
Enclosure

cc: Brian Wanca
  Blaine Kimrey
  Bryan Clark

CALIFORNIA  COLORADO  ILLINOIS  KANSAS  MASSACHUSETTS  MISSOURI  NEW YORK

21535121v1

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI (ST. LOUIS)

RADHA GEISMANN, M.D., P.C., )
)
        Plaintiff, )
)
    vs. )    Case No. 4:14-cv-00472-CDP
)
ZOCDOC, INC., )
)
        Defendant. )
)
)

### OFFER OF JUDGMENT

Pursuant to Fed. R. Civ. P. 68, defendant ZocDoc, Inc. ("ZocDoc") offers to allow judgment to be taken against it in this action in favor of individual plaintiff Radha Geismann, M.D., P.C. ("Geismann") for $6,000.00 (six thousand dollars), reasonable attorneys' fees as determined by the Court related solely to Geismann's individual claim, and an injunction barring ZocDoc from engaging in the statutory violations alleged in this action. This offer is intended to provide full and complete individual relief in this matter as sought by Geismann in the Petition against ZocDoc. This offer is made solely for the purposes specified in Rule 68 and is not to be construed as an admission that ZocDoc is liable in the above-captioned matter (or any other matter) to Geismann or anyone else or that Geismann has actually suffered any damage. Pursuant to Rule 68, Geismann has fourteen (14) days to accept this offer in writing.

Dated: March 27, 2014

Respectfully submitted,

LATHROP & GAGE LLP

*/s/ Blaine C. Kimrey*

Blaine C. Kimrey (#50074)
bkimrey@lathropgage.com
Bryan K. Clark (*pro hac vice* motion forthcoming)
bclark@lathropgage.com
155 N. Wacker Drive, Suite 3050
Chicago, IL 60606
Telephone: (312) 920-3300
Facsimile: (312) 920-3301

Matthew Jacober (#51585)
mjacober@lathropgage.com
Pierre Laclede Center
7701 Forsyth Blvd., Suite 500
Clayton, MO 63105
Telephone: (314) 613-2800
Facsimile: (314) 613-2801

**Attorneys for defendant ZocDoc, Inc.**

## CERTIFICATE OF SERVICE

I, Blaine C. Kimrey, hereby certify that on this 27th day of March 2014, a true and correct copy of the foregoing was served by email and hand delivery upon:

Max G. Margulis, Esq.
MARGULIS LAW GROUP
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022
F: (636) 536-6652
maxmargulis@margulislaw.com

Brian J. Wanca, Esq.
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
P: (847) 368-1500
bwanca@andersonwanca.com

/s/ Blaine C. Kimrey
An attorney for defendant ZocDoc, Inc.

# Exhibit 2

| | |
|---|---|
| **From:** | Max Margulis <maxmargulis@marguislaw.com> |
| **Sent:** | Tuesday, April 08, 2014 9:32 PM |
| **To:** | Jacober, Matthew A. |
| **Cc:** | bwanca@andersonwanca.com; Kimrey, Blaine C.; Clark, Bryan K. |
| **Subject:** | Re: Geisman v. ZocDoc - Offer of Judgment |

This offer has been discussed with our client. They are willing to
accept the offer if you are making the same offer to all members of the
class. As a class representative they have an obligation to the other
members of the class and reject your individual offer of judgment.

Cherish.
Margulis Law Group

Please confirm receipt of this email.

Max G. Margulis,
MO #24325 Federal #24325MO IL #1764640
Margulis Law Group
28 Old Belle Monte Rd.
Chesterfield, MO 63017
P: (636) 536-7022 - residential
F: (636) 536-6652 - residential

TCPALaw.com - the leader in TCPA legal research
Please enter case name in the "Subject Line"


On 3/27/2014 10:47 AM, Jacober, Matthew A. (LG) wrote:
>
> Gentlemen –
>
> Please see the attached, which has been or will be hand-delivered to
> each of your offices today. As indicated in the cover letter, Blaine
> Kimrey will address your questions.
>
> Thanks Matt
>
>
>
> MatthewJacober
> Partner
> Pierre Laclede Center, 7701 Forsyth Boulevard, Suite 500|Clayton,MO 63105
> P: 314.613.2845|F: 314.613.2801|M: 314.707.3962
>
> MJacober@LATHROPGAGE.COM <mailto:MJacober@LATHROPGAGE.COM> |
> www.lathropgage.com <http://www.lathropgage.com>
>
> */Please consider the environment before printing this email./*
>

1

> -----------------------------------------------------------------
> Any U.S. federal tax advice contained in this communication (including
> any attachments or enclosures) was not intended or written by the
>  author to be used, and cannot be used, for the purpose of (1)
> avoiding penalties that may be imposed on a taxpayer or (2) promoting,
>  marketing, or recommending to another party any transaction or other
> matter addressed herein.
> -----------------------------------------------------------------
> -----------------------------------------------------------------
> This e-mail (including any attachments) may contain material that (1)
> is confidential and for the sole use of the intended recipient, and
> (2) may be protected by the attorney-client privilege, attorney work
> product doctrine or other legal rules. Any review, reliance or
> distribution by others or forwarding without express permission is
> strictly prohibited. If you are not the intended recipient, please
> contact the sender and delete all copies.
> -----------------------------------------------------------------